Amos W. BASS, Plaintiff,

v.

WARREN FISH COMPANY, a Florida corporation, Defendant.

Civ. A. No. 771.

United States District Court
N. D. Florida, Pensacola Division.

Dec. 18, 1956.

Rassner, Miller & Roth, Miami, Fla., for plaintiff.

Jones & Harrell, Pensacola, Fla., for defendant.

DE VANE, Chief Judge.

This action is brought by plaintiff under the Jones Act, 46 U.S.C.A. § 688. The first two counts are to recover damages because of the alleged unseaworthiness of the fishing vessel "Francis Taylor", owned by defendant upon which plaintiff was employed as a seaman. The alleged ground for the unseaworthiness of the vessel is that plaintiff became ill while on a fishing trip and the defendant failed to carry upon board the necessary medicine or to provide plaintiff with the required medical aid and assistance it was under obligation to do under the law. The issues raised in these two counts of the complaint were tried before a jury and at the conclusion of plaintiff's evidence the Court directed a verdict for defendant because of the complete failure of plaintiff to prove unseaworthiness as alleged.

The third count of the complaint seeks to recover maintenance and cure and the fourth count seeks to recover plaintiff's share of the catch of the vessel for the voyage during which he was rendered ill and incapacitated. The issues raised by these two counts were tried to the Court without a jury.

The evidence disclosed that when plaintiff went aboard the vessel for the voyage he was suffering with dermatitis medicementosa of both hands and feet. He had been first attacked by this disease approximately six months prior to the voyage, but the rash had been kept fairly well under control except that when plaintiff returned on his last trip on the "Culebra", a fishing vessel operated by defendant, he was suffering from the rash and was sent by the Master of the Culebra to the Medical Health Officer at Pensacola and received treatment. Plaintiff was very anxious to go to sea on the Francis Taylor, which was to leave port in late December, 1955, and the Master of the Francis Taylor agreed that he may go if he secured a discharge from Dr. Hoyt. Dr. Hoyt did not give plaintiff a discharge before the Francis Taylor sailed; in fact, plaintiff failed to return to Dr. Hoyt on the day before the vessel was to sail to ascertain whether or not Dr. Hoyt would give him a discharge. The evidence is in conflict as to whether plaintiff reported to the Master of the Francis Taylor that Dr. Hoyt had discharged him, plaintiff claiming that he made no representation whatever on the subject and the Master testifying that he did report Dr. Hoyt had discharged him and agreed to his sailing on this vessel.

The evidence indicates strongly that most of the crew, including plaintiff, that left on the Francis Taylor were intoxicated when the vessel left port and remained in an intoxicated condition until the vessel arrived at the fishing grounds some five days later. By that time plaintiff's rash had become angry again and plaintiff was suffering extensively from it. The vessel called the Coast Guard which brought medicine for plaintiff's use, but plaintiff refused to accept or use the medicine, claiming he had tried it before and that it gave him no relief. Very shortly thereafter plaintiff's condi-

tion became such that it was necessary to take him to a hospital for medical treatment and the vessel took him to Brownsville, Texas, where he was sent to a Public Health Service Hospital upon a certificate from the Master of the vessel. Plaintiff was shortly thereafter transferred to the Public Health Service Hospital at Galveston, Texas, by the Public Health Service. After brief treatment there, plaintiff was discharged from the hospital and directed to report back for final examination at the expiration of two weeks. Prior to that time, however, plaintiff suffered a heart attack after he had been out of the hospital only five days and returned to the hospital because of the heart condition. By the time his heart condition was cleared up plaintiff's dermatitis medicementosa was also cleared up and he returned at his own expense to his home port, Pensacola, Florida.

The third count seeks to recover maintenance for the five days that plaintiff was out of the hospital in Galveston, Texas, and for the two days in traveling by bus from Galveston, Texas, to Pensacola, Florida, plus $16 for transportation. These items are all allowed and the Court will award damages at the rate of $5 a day for seven days' maintenance and $16 for the transportation cost.

The fourth count seeks to recover plaintiff's share of the catch on the voyage on which plaintiff was a member of the crew. It is stipulated by the parties that this sum is $112.29. The question as to defendant's liability is a new one for this Court and counsel for the parties were requested to furnish the Court with authority on the subject. Only counsel for plaintiff has done so and cites the opinion of the District Court in Vitco v. Joncich, D.C., 130 F. Supp. 945, and the decision of the United States Court of Appeals for the Ninth Circuit adopting the District Court's opinion and affirming the judgment of the lower court. See 234 F.2d 161. District Judge Mathes in an able and carefully considered opinion on the subject holds that a seaman is entitled to re-

cover his share of the catch on a voyage, even where he is taken ill and forced to leave the vessel before it returned to port. The Court follows the decision of Judge Mathes in this case and finds and holds that plaintiff is entitled to recover his share of the catch in the sum of $112.29.

Judgments will be entered on all counts of the complaint in this case in conformity with this Memorandum-Decision.